Good morning. Good morning Council. Council for Petitioner, please proceed. Thank you. Good morning, Your Honors. May it please the Court, Guadalupe Garcia appearing on behalf of the Petitioner Carlos Martinez-Aguilar. I would like to reserve two minutes for rebuttal. I will keep an eye on the clock. All right. Thank you. Your Honor, I believe there are the issues in this case. First, addressing the murder of Mr. Martinez's father in 2015, and whether it was a changed circumstance under 8 U.S.C. 58A2D, that should have excused him from the one-year assignment filing deadline. Our position is the Board committed legal error and abused its discretion in upholding the immigration judge's finding that Mr. Martinez's former counsel had waived any argument that material changed circumstances. Counsel can I, let me ask you, I want to make sure I have the record straight on this. The application was filed 20 years after entry, so it's facially untimely unless there are changed circumstances. You agree? Yes, Your Honor. Okay. And the I.J. said to counsel for Mr. Martinez, are you claiming changed circumstances, and counsel said no. Correct? I believe she asked if he believed there was an exception. Yeah. And he said no. Yes, Your Honor, that's correct. And then the I.J. entered an opinion that said counsel, they're not, counsel said they're not claiming an exception, and there's no evidence in this record of changed circumstances because nobody tried to put evidence before the I.J. of the murder of the father. Correct? Well, I would — I mean, it's a yes or no answer. I would disagree because Your Honor indicated that no one attempted to put forth evidence, and I believe Mr. Martinez's asylum claim was based on the 2015 death of his father. So your claim is that he — what should the I.J. have done? That's what I'm trying to figure out. Because the BIA says you didn't raise the death of his father as a changed circumstance until appeal, and we can't consider something raised for the first time on appeal. So I'm trying to figure out how did you raise the — his asylum application says the death of his father, but that's a claim of why he will be persecuted. It doesn't claim it as a changed circumstance. So I want to know what — wasn't the I.J. correct on this record in saying you said you weren't going to claim any changed circumstances and you didn't put in any evidence of them? Your Honor, I don't believe the immigration judge was correct. The asylum application was filed in 2016. The basis of Mr. Martinez's asylum claim was the death of his father in 2015. The immigration judge's decision does indicate that the — Mr. Martinez's date of entry is 1990, and he had one year to file from April 1st, 1997. Mr. Martinez was placed in proceedings in 2013. The death of his father took place in 2015. He then filed his application in 2016, which our position is the judge should have taken into consideration in issuing the decision on the — Well, that's — so the judge — the I.J. should have said, even though your counsel says you're not claiming any exceptions from the one-year bar, I'm going to take into consideration the murder of your father and try to figure out whether it is changed circumstances. Is that your — see, you may have gotten ineffective assistance of counsel, but that's a motion to reopen, as you know, and not something that the BIA considers on appeal. I'm just trying to figure out — I'm thinking from the perspective of the trial judge. Did he really abuse his discretion by accepting the concession of counsel? I think — I think counsel — I think counsel made a mistake, but I think the immigration judge, when issuing the decision on the one-year issue and whether there was any changed circumstances, did not address the death of his father in 2015 and then the filing of the asylum in 2016, which would arguably have been within the year of the changed circumstance, and Again, it was the basis of Mr. Martinez's asylum claim. Well, he does address it under the withholding, does he not? I'm sorry, Your Honor? When he gets to your withholding claim, which is not barred by the one-year statute, isn't the — doesn't the I.J. extensively address the death of the father? Because it's part of the — it's part of the fear of persecution claim, correct? Yes. The immigration judge — this does address the death of Mr. Martinez's father in consideration of the — No, he doesn't ignore evidence about the death of the father. He looks at it and says it's not enough, considering other stuff, to give rise to either a withholding or a CAT claim. All he doesn't do, in your view, he should have said, gee, I've got all this evidence in front of me. I should treat that as a change of circumstance, even though the lawyer tells me he's not contending such. It would be one thing if he just overlooked the death of the father, but he discusses it extensively — he or she, I'm sorry, I don't mean to be genderist here, it's she — she discusses it extensively in the — in her order. So she's quite aware of the death of the father and doesn't think it gives rise to a fear of future persecution. But you say she also should have, despite counsel's concession, considered whether it was a change of circumstance. I think that's your position, yes? But for the asylum application, your honor, which the analysis for the asylum claim and for withholding, it considers a different — they're not the same type of analysis. I understand — No, I understand. I understand. You might have been able to establish eligibility for asylum on less proof than withholding requires. I was responding to your notion that the IJ was well aware of the death of the father. It's no doubt. It's throughout her opinion. And so what you're saying is that she should have sua sponte treated this as a — as establishing a change of circumstance. I think that's what you're saying, yes? I believe it should have been an important consideration in the decision on the one-year issue. Okay. Counsel, did you want to save time for rebuttal? Yes, your honor. Thank you. All right. Thank you. We'll hear from the government. Good morning, your honors. Giovanni DiMaggio on behalf of the attorney general. Your honors, the agency properly denied the asylum application was untimely and then proceeded to properly deem waived the change of circumstance argument based on counsel's concession of the one-year bar before the IJ. Now, to the extent Mr. Martinez-Aguilar argues through counsel that — or attempts through counsel to fault the board for not addressing his argument, which arguably is unexhausted as the government notes in its brief, about this ineffective assistance or unjust result argument, remand here would be futile, even assuming in arguendo that the board erred in failing to address this point, specifically couched in a change circumstance analysis because at the end of the day, the relocation analysis that it engaged in for purposes of withholding removal, as your honors were referring to in your questioning, Judge Hurwitz, in your questioning, that analysis essentially would be — it is dispositive of the issue. And is it the — maybe I'm looking at the wrong regs, but the relocation reg for withholding talks about fear of physical harm, those — I can find it, but the relocation reg for asylum talks about persecution. So it seems to me the relocation reg for withholding is more strenuous, if you will, more demanding than the relocation reg for asylum. Do I have it wrong? MR. HURWITZ. Well, Judge Hurwitz, I don't dispute — the government doesn't dispute that the standards  I think it's an ineligibility — JUSTICE SCALIA. No, I'm talking about the standards for — let's assume we're — we've gotten to the relocation analysis. Forget the standard for claiming asylum or claiming withholding. The reg — and I'll try to find it as we talk, but I thought the reg that dealt with the burden of showing the inability to relocate for withholding talked about physical harm and that the one for asylum only talked about persecution. Am I wrong about that?  HURWITZ. Well, let me check for you, Your Honor, but I just want to emphasize that the salient point from the government's perspective about these regs — and to help you track them down while we're talking, it's — for asylum, it's 1208.13 subsection B-2, and for B-2, little 2 Romanet, and then for withholding, it's 1208.16.  JUSTICE SCALIA. With that regard to the precise citations, what are the — what's the substantive requirement when you're dealing with relocation under withholding? HURWITZ. Under withholding, it's — it indicates that an applicant cannot — forgive me for looking down and just reading from the code — or the regs — the applicant cannot demonstrate that his or her life or freedom would be threatened if the asylum officer or immigration judge — JUSTICE SCALIA. Okay. Right. Yeah, just stop for a second. Withholding the applicant has to — the burden is to show that you — that your freedom — your freedom or what would be threatened? HURWITZ.  JUSTICE SCALIA. Life. HURWITZ. Your life or freedom. JUSTICE SCALIA. Okay. It seems to me there what you have to show is that you — you have to show that you can't relocate to a place where you wouldn't be persecuted. So I'm not sure that the finding that you couldn't establish — you couldn't meet the relocation requirements for withholding necessarily means that you couldn't meet the relocation requirement for asylum. Now, it doesn't matter if the issue is waived. I'm just — I'm responding to your argument that the withholding relocation decision necessarily would have barred a relocation argument under asylum. Sure. Well, Judge Hurwitz, respectfully, I think that might be a hair that is maybe impossible to split here. And I think that the one thing I want to draw your attention to is in both of these regulations, which, again, acknowledge differences in terms of burdens of proof for asylum and withholding, they both end at the same point, which is that in either case, whether it's asylum or withholding removal, if you can — if you — if it is shown that the applicant can reasonably and safely relocate, they cannot meet their burden, either for asylum or — But I've started down this road, so I'm going to continue down it. You're not responding to my question. My question is this. For withholding, the issue is whether you cannot safely relocate in order to avoid physical harm — threats to your life or physical harm. For asylum, the question is whether or not you can safely relocate to avoid persecution. That's what the reg says. And it seems to me persecution is a lower standard. I might — I might well be able to establish that I will be persecuted, but that my life or physical — or my life or body will not be threatened. And all I'm saying is that the finding that one did not satisfy the relocation standard as a matter of issue or — issue preclusion, if you will — we're talking about that today — doesn't tell me that they couldn't satisfy the persecution standard. There may be no evidence in this record that meets the persecution standard, but because the asylum application was pretermitted, the IJ never addressed that. So I just don't buy your argument that the finding on withholding means that this applicant, if eligible, couldn't possibly have met the standards for asylum. Your Honor, I'm unaware of any authority that, you know, equates the life or freedom phraseology to something less than persecution. You know, this court's case law and — You think it's less than persecution? You think it's less than — see, I think it's more than persecution. Well, both — persecution is the theme throughout withholding and asylum. And you know, for example, just in that same regulation, you know, it starts with an applicant who has not suffered past persecution, you know, which is kind of paying off its defense. Well, let me — I'll let you off the hook because I think you're — you're busy mixing up a basket of apples and oranges. So let's go back to the original issue. Why was the BIA correct in treating any change of circumstances claim as waived? Because it was reasonable for it to rely on the express waiver by counsel, which was issued in terms of the chronology. It was issued with the benefit of the IJ having flagged the, you know, potential one-year bar. Counsel indicating at the September 2016 hearing that, you know, that's something that he could brief or she could brief — forgive me, I can't remember specifically who counsel was before the IJ. And then notwithstanding that projection that that would be something that would be briefed, when they showed up for the merits hearing in February 2018, the counsel — the attorney conceded that the one-year bar applied and, you know, in turn, he would not — Mr. Martinez-Aguilar would not be relying on any exception thereto. Could you respond to your friend's argument, as I rephrased it, so I'm not being unfair to her, which is that, notwithstanding counsel's position, the IJ should have said, well, your father's death is all over this record. Let me consider whether that's a changed circumstance. Again, I think that's an unreasonable bar to set for the immigration judge in the face of an attorney appearing before the immigration judge and expressly waiving the one-year bar issue. I think it was more appropriate for the agency to do what it did here, which was to thoroughly consider that aspect of Mr. Martinez-Aguilar's claim in the claim — you know, the withholding removal claim that did survive the one-year bar, because no such bar applies to it. And it's, I think, important to circle back to the point that substantial evidence does support the agency's finding that Mr. Martinez-Aguilar can safely relocate to avoid future harm on account of what he fears would happen to him with this family-based social group. I want to emphasize that he waives any challenge to the agency's finding regarding the reasonableness of the relocation. And really, this just boils down to whether he could safely relocate. And Gonzalez-Hernandez is the strongest case on point for this issue. In that case, the court upheld a relocation finding — a safe relocation finding — where the country conditions evidence explained that a person that would usually be susceptible to persecution in that instance would only be susceptible to such persecution in their home community. And that is the closest analog to here. The record evidence suggests that Mr. Martinez's paternal family members, including his uncle Miguel, would take an interest in harming him if they had the means to do so, only if he could end up in Tuxtla Gutierrez, as opposed to relocating outside of that area. And as the agency reasonably relied on here, all of his father's siblings, including Miguel, reside in Tuxtla Gutierrez. Mr. Martinez has never had any communication with his uncle. His uncle has cut him and his sister off from communication. He's estranged himself from the rest of the family by isolating himself in a property far away from his family, although within the same region. And again, Mr. Martinez Aguilar admits by his own admission in his testimony that it's unlikely he would seek out his uncle or contest the inheritance, which he admits would be the precursor to his uncle Miguel coming after him. I see I'm out of time. Unless your honors have any further questions, for the reasons I just stated, as well as- I have a quick question. So do you think the BIA, he did raise the issue of that waiver before the BIA, and do you think the BIA had any obligation to address the attorneys not raising the issue of the one-year waiver? Not beyond what it did. As the government points out in the answering brief, the BIA was right to deem that argument waived, that's supported by the record by counsel's waiver of this issue before the immigration judge at the merits hearing. And to the extent that the board didn't proceed to address the unjust result or ineffective assistance argument as kind of has been transformed on petition for review, the government's position on that is that the board wasn't required to because that issue was not sufficiently presented in the brief on appeal. It was just referenced to in passing, so the board didn't have an obligation to address it. Well, didn't he raise, I mean, didn't he strongly raise it on appeal? I think there was at least quite a discussion about why it would result in an unjust result. It wasn't just cursory as in some of the other cases. And the BIA never really addressed that. Well, again, it was more of a passing reference, as the government notes. If you look on page 22 of the record, that's the only place where it comes up in the brief on appeal. And it's literally the sentence reads, the first circumstance in which an alien must be relieved of an admission of counsel is that binding him to that admission would produce an unjust result, period, full stop. That's the entire quote unquote argument. It's not supported by any citation to relevant authority or to the record that would kind of bolster or support that argument. So that's why the government's threshold position on this issue is that it was waived on appeal and therefore unexhausted for purposes of this court's review. But as to the board's responsibility to answer your specific question, Judge Cardone, the board wouldn't have been obligated to address that issue because it was not properly preserved in the brief on appeal. And just to follow all the way through that thread, the fallback to that position is that regardless, even if you want to assume an arguenda that the board erred in failing to address the point, this goes back to my discussion with Judge Hurwitz, I think you might disagree with this, but the agencies addressing the relocation, the reasonableness and safety of his relocation in the context of withholding a removal would have been dispositive of this issue. Their factual findings may be, because they said there's no evidence that anybody would be interested in chasing him outside his hometown. What I'm saying is that the legal standards might be different for showing relocation, inability to relocate for asylum and withholding. All right. Thank you, counsel. Thank you, Your Honors. Rebuttal? Rebuttal? Counsel? Are you muted? Counsel? Yes, I am. I apologize. Thank you. I would just like to address one point, Your Honor. I believe our argument before the Board of Immigration Appeals was extensive regarding the changed circumstances and the waiver of the one-year issue and our asking of the board and the board a committed error in not addressing this issue in detail. Addressing what issue, counsel? Our argument regarding the father's death in 2015 and the finding of his asylum in 2016 of being a changed circumstances for the purpose of the one-year issue on asylum. So can I take you back to something the government said? Because I gave counsel maybe a rough time on the legal standards. But on the relocation analysis under withholding, the BIA said there's absolutely no evidence that if your client wasn't in his hometown that the bad guys, if I can call them that, would have any interest in him at all. And it seems to me that factual finding, whether or not denying relocation, whether or not legally the standards are the same, would absolutely doom your asylum claim because you would be unable to show that you couldn't safely relocate. So even if there were an asylum claim, doesn't the factual finding that the BIA made about relocation kill your asylum application? Your Honor, I don't believe so. What the board indicated was that the respondent's uncle would not have an interest or the means to locate or contact Mr. Martinez outside of Chiapas. If that were the case, then how could he claim that they would persecute him if he were outside of his hometown? Your Honor, the respondent, Mr. Martinez's position is that because his uncle has an interest, a concern in Mr. Martinez returning to Mexico because of the circumstances of the father's death, of the uncle taking... The IJ knew about all that when she said you hadn't shown that you could not safely relocate outside the hometown to avoid threats to your life or bodily injury. And I'm saying that finding would seem to me to apply equally well even to relocation under asylum, even if the legal standard is less. And, you know, we're not here to question the IJ's factual findings. So it seems to me the government's point may be right about relocation, even if the two relocation statutes or regs have different burdens of proof. Well, again, I think we would disagree that the respondent's uncle would not have an interest to search or look for Mr. Martinez. But you're disagreeing with the factual finding of the IJ? I would disagree with the immigration judge's interpretation of the testimony and the evidence. Okay. Thank you. I took you over. I'm sorry. All right. Counsel, did you want to close? Your Honor, I have nothing further on the record. I will submit. Thank you. All right. Thank you. Thank you to both counsel. The case, as argued, is submitted for decision by the Court.
judges: RAWLINSON, HURWITZ, Cardone